OPINION
{¶ 1} Appellant John McAllister appeals his conviction and sentence for domestic violence in the Stark County Court of Common Pleas.
 {¶ 2} The Appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 3} The relevant facts leading to this appeal are as follows:
 {¶ 4} On June 2, 2002, Appellant met with his girlfriend of five years, Terry Woods. (T. I. of II. at 16). Ms. Woods testified that Appellant was drunk and mean. (T. I. of II. at 16). Ms. Woods testified that Appellant asked her for money to buy more beer and when she ultimately gave it to him he hit her in the face. (T. I. of II. at 17). She further testified that he bought more beer with her money and he continued to drink. (T. I. of II at 17-18). Ms. Woods further testified that when she tried to talk Appellant out of driving in his condition, he shoved her, telling her "Get off me, bitch." (T. I. of II. at 20). Appellant then proceeded to punch her in the head and kick her. Id. According to Ms. Woods testimony, Appellant insisted that she drive him to several more bars. Id. He took a box cutter out of his pocket, held it to her face and asked her "Is there any doubt in your mind that I'll kill you?" followed by his asking her "Is there any doubt in your mind that I'll cut you up?" (T. I. of II. at 21). Appellant then cut her in the face and told her that the cut was for "being a sell out bitch" because she had left him over the weekend. (T. I. of II. at 21-22). Appellant then grabbed Ms. Woods by the neck, threw her toward the front door then grabbed her by the hair and pulled her away from the door. (T. I. of II. at 22). Next, Ms. Woods drove Appellant to several bars, remaining in the car while he went inside. (T. I. o f II. at 22-23). Appellant took the truck keys with him into the bars. (T. I. at 22). Ms. Woods testified that she did not try to escape because she has a bad hip and because she was afraid of Appellant. (T. I. of II. at 22). Ms. Woods also testified that Appellant hit her in the head and face while she was driving in addition to twisting her arm and biting her. (T. I. of II. at 23). Finally, sometime around 3:00 p.m. they returned home, wherein Appellant hit Ms. Woods in the nose. (T. I. of II. at 23-24). Ms. Woods left the house by telling Appellant that she was having an asthma attack and needed to go to the hospital. (T. I. of II. at 24). While receiving treatment for her injuries, Ms. Woods eventually informed the nurses of the violence she had encountered and reported the assault to the police. (T. I. at 25-27).
 {¶ 5} Upon arriving at the hospital, Officer Steven Meyer noticed that Ms. Woods was visibly upset, had a cut to her face, a bite on her arm and numerous bruises. (T. II. of II. at 30-33). She also cried throughout the interview. Id.
 {¶ 6} Officer Meyer next went to appellant's home and arrested him without incident. (T. II. of II. at 34-36, 38, 50-54).
 {¶ 7} On June 7, 2002, the Stark County Grand Jury indicted appellant on one count of domestic violence in violation of R.C. §2919.25(A), a misdemeanor of the first degree, and one count of felonious assault, in violation of R.C. § 2903.11(A)(2), a felony of the second degree.
 {¶ 8} On August 19, 2002, the case proceeded to a jury trial. Upon conclusion of the trial, the jury found Appellant guilty as to the count of domestic violence and not guilty on the charge of felonious assault.
 {¶ 9} By Judgment entry filed August 27, 2002, the trial court sentenced appellant to a definite term of six months imprisonment in the Stark County Jail.
 {¶ 10} Appellant timely appealed and herein raises the following sole Assignment of Error:
 ASSIGNMENT OF ERROR {¶ 11} "I. Appellant's conviction for domestic violence was against the manifest weight of the evidence. (Tr. At Vol. II of II, pg 116)."
 I. {¶ 12} In his sole Assignment of Error, appellant contends that his conviction was against the manifest weight of the evidence. We disagree.
 {¶ 13} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine, "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin
(1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997),78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 14} In support of his position, appellant states that because the only testimony presented at trial was that of the victim, his conviction was against the manifest weight of the evidence.
 {¶ 15} Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 16} Upon review of the transcript in this matter, we find that the trial court had before it the testimony of Ms. Woods with corroborating medical records, photographs and testimony of the responding officers.
 {¶ 17} Based on the above, we find that the jury did not lose its way in convicting appellant of domestic violence.
 {¶ 18} Appellant's sole assignment of error is overruled.
 {¶ 19} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.